UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY A. HIJJAWI, ) | |
| ) | |
| Appellant, ) | |
| ) | No. 12 C 4430 |
| v. ) | |
| ) | Judge Ruben Castillo |
| FIVE NORTH WABASH ) | |
| CONDOMINIUM ASSOCIATION, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

This unusual appeal arises from a dispute over whether condominium fees and assessments incurred during the pendency of a bankruptcy proceeding, after the filing of a Chapter 11 petition and prior to the case's conversion to a Chapter 7 proceeding, are dischargeable debts. The bankruptcy court held that such fees and assessments were not dischargeable.

Appellant Amy Hijjawi filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. She later converted the proceeding to a Chapter 7 bankruptcy and was granted a discharge of her debts. Between the initial filing under Chapter 11 and the conversion to a Chapter 7 case (the "Chapter 11 period"), Hijjawi incurred various fees and assessments on her condominium units charged by Five North Wabash Condominium Association ("Five North"). In her motion to extend the automatic stay after the conversion to a Chapter 7 case, Hijjawi raised the issue of whether the Chapter 11 period fees were dischargeable. In denying Hijjawi's motion to extend the automatic stay, the bankruptcy court determined that the fees and assessments that accrued during the Chapter 11 period were not dischargeable. Hijjawi appeals the bankruptcy court's determination that the Chapter 11 period debt was non-dischargeable.

Upon initial review, this Court dismissed Hijjawi's appeal for reasons discussed below. Presently before the Court is Hijjawi's motion to reinstate her appeal.

## BACKGROUND

Hijjawi owns three condominium units at Five North Wabash in Chicago, Illinois. (Bankr. R. 155, Mem. Op. at 1.)[1] In 2011, Hijjawi violated Five North's Declaration of Condominium and the Chicago Vacation License Ordinance by renting her condominiums on a short-term basis. (*Id.* at 1-2.) After issuing a written violation, holding a hearing, fining Hijjawi, and demanding that she cease and desist short-term rentals, all without results, Five North eventually sought injunctive relief in the Circuit Court of Cook County.[2] (*Id.* at 2.) On July 11, 2011, the circuit court judge issued a temporary restraining order ("TRO") ordering Hijjawi to shut down her rental business. (*Id.*) Hijjawi continued to rent her condominiums on a short-term basis, in violation of the TRO. (*Id.*)

On July 29, 2011, Hijjawi filed a voluntary Chapter 11 petition. (Bankr. R. 1, Pet.) On August 18, 2011, Five North moved to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1), to allow it to proceed with the injunction proceeding in state court. (Bankr. R. 16, Five North's Mot. to Lift Stay.) On September 1, 2011, the bankruptcy court granted Five North's motion to allow Five North to enforce the TRO until January 1, 2012. (Bankr. R. 31, Order.)[3] On

---

[1] Citations to (R. _) refer to the record number that a document is assigned on the docket for this case. Citations to (Bankr. R. _) refer to the record of the bankruptcy proceedings, a portion of which was filed as Exhibits 3-52 to Hijjawi's appeal (R. 1).

[2] *Five N. Wabash Condo. Ass'n v. Hijjawi*, Case No. 11 CH 23830 (filed July 7, 2011).

[3] The bankruptcy court's order was not included in the bankruptcy record provided on appeal. The Court takes its information from the bankruptcy docket, which describes docket entry 31 as "Order Granting Motion for Relief from Stay (Related Doc # 16) including to allow Five North Wabash Condominium Association to enfore [sic] the Temporary Restraining Order issued in that proceeding until January 1, 2012."

2

November 9, 2011, Five North filed a second motion for relief from the automatic stay, this time to allow it to enforce its state law right to dispossess Hijjawi from her units. (Bankr. R. 39, Five North's Second Mot. to Lift Stay.) Five North alleged that Hijjawi was delinquent in paying her post-petition expenses, including monthly assessments and the legal fees that Five North incurred in compelling her compliance with the TRO. (*Id.* at 5-6.) On December 12, 2011, the bankruptcy court extended its previous order lifting the automatic stay, (Bankr. R. 31), indefinitely for the purpose of allowing Five North to proceed with its state court case against Hijjawi. (Bankr. R. 63, Order.)

On December 27, 2011, Hijjawi moved to convert the case from Chapter 11 to Chapter 7. (Bankr. R. 68, Mot. to Convert.) Hijjawi's case was converted to Chapter 7 on January 9, 2012. (Bankr. R. 76, Order.) On the same day, the bankruptcy court granted Five North's November 9, 2011 motion to lift the automatic stay in order to allow Five North to proceed with its state law rights and remedies against Hijjawi, but stayed the order until February 10, 2012 to give the Chapter 7 Trustee an opportunity to act before the order became effective. (Bankr. R. 75, Order; Bankr. R. 155, Mem. Op. at 3.)

On January 31, 2012, Hijjawi moved to extend the automatic stay,[4] arguing that the debts she incurred during the Chapter 11 period were dischargeable and thus Five North should not be allowed to enforce them. (Bankr. R. 82, Mot. to Extend Stay ¶¶ 7-13.) Five North entered its objection to that motion on February 9, 2012, arguing that any debts Hijjawi accrued after the filing of her petition were non-dischargeable. (Bankr. R. 83, Five North's Obj. ¶¶ 10-14.) After a hearing on February 10, 2012, the automatic stay was extended until March 2, (Bankr. R. 90,

---

[4] Although Hijjawi's motion was nominally titled "Debtor's Motion to Extend Automatic Stay," the title is misleading. The motion and the accompanying responsive briefing appear to have been used as a vehicle for the briefing of a number of substantive issues including, most significantly, the dischargeability of the Chapter 11 period debt.

3

Order), and supplemental briefing was ordered on a variety of issues, including whether the Chapter 11 period fees were dischargeable, (*see* Bankr. R. 155, Mem. Op. at 3). The parties briefed this issue extensively. (Bankr. R. 95, Debtor's Resp.; Bankr. R. 108, Five North's Reply; Bankr. R. 112, Five North's Suppl. Reply; Bankr. R. 113, Debtor's Rebuttal; Bankr. R. 115, Debtor's Rebuttal.)

After a hearing on March 2, 2012, the automatic stay was again extended and supplemental briefing was again ordered and completed. (Bankr. R. 119, Order; Bankr. R. 121, Five North's Suppl. Br.; Bankr. R. 122, Debtor's Resp.) On March 16, 2012, after a hearing, the bankruptcy judge orally indicated a ruling in favor of Five North, but the stay was again extended to allow Five North to file a statement with a detailed accounting of Chapter 11 period assessments and fees, (Bankr. R. 128, Order; Bankr. R. 155, Mem. Op. at 4), which Five North filed on March 25, 2012, (Bankr. R. 132, Five North's Statement). At a March 27, 2012 hearing, the bankruptcy court again extended the stay and ordered briefing in response to Five North's accounting statement. (*See* Bankr. R. 155, Mem. Op. at 4.) Such briefing was completed, (Bankr. R. 140, Debtor's Resp.; Bankr. R. 142, Five North's Reply; R. 148, Debtor's Resp.), and a final hearing was held on April 20, 2012.

On April 24, 2012, Hijjawi was granted a Chapter 7 discharge. (R. 147, Order of Discharge.) On May 11, 2012, the bankruptcy court denied Hijjawi's motion to extend the automatic stay and issued a lengthy opinion determining that Hijjawi's Chapter 11 period debt was non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(16) and 727. (Bankr. R. 155, Mem. Op; Bankr. R. 157, Order.)

4

On June 7, 2012, Hijjawi appealed to this court from the bankruptcy court's order lifting the automatic stay.[5] (R. 1, Appeal.) Hijjawi argued that the Chapter 11 period fees and assessments are dischargeable. (R. 13, Hijjawi's Br. at 5-7.) Five North initially filed a cross-appeal but, on August 3, 2012, moved to voluntarily dismiss the cross-appeal. (R. 16, Five North's Mot.) Five North argued that the issue on appeal had not actually been adjudicated by the bankruptcy court and therefore an appeal was inappropriate. (*Id.* ¶¶ 2-3; R. 15, Five North's Resp. at 10.) Five North further argued that the Court had no jurisdiction to entertain Hijjawi's appeal because the closure of the bankruptcy case mooted the appeal. (R. 15, Five North's Resp. at 10-11.) On August 8, 2012, the Court granted Five North's motion to dismiss its cross-appeal. (R. 19, Min. Entry.) The Court concluded that it had no jurisdiction to proceed with Hijjawi's appeal and dismissed it without prejudice with full leave to reinstate. (*Id.*) The Court invited Hijjawi to file a motion with a supporting memorandum stating the basis of this Court's jurisdiction if she wanted to proceed with her appeal. (*Id.*) Hijjawi filed a motion to reinstate her appeal on August 15, 2012. (R. 20, Hijjawi's Mot.) That motion is presently before the Court.

On October 16, 2012, Hijjawi filed a motion in the bankruptcy court for a stay of the order pending this appeal in order to prevent Five North from pursuing its state court forcible entry and detainer proceedings to collect on the Chapter 11 period debt. (Bankr. R. 190, Debtor's Mot. to Stay Pending Appeal.) Five North filed its objection on October 23, (Bankr. R. 191, Five North's Obj.), and on October 25, the bankruptcy court granted Hijjawi's motion to

---

[5] Hijjawi's appeal briefing purports to appeal an order entered on May 14th. (R. 1, Appeal at 1, 3.) This appears to be a scrivener's error, as the bankruptcy case docket sheet Hijjawi attaches to her appeal does contain a court order from May 14. The substance of her appeal and Five North's response concerns the bankruptcy court's order denying the motion to extend the automatic stay, which was entered on May 11.

5

stay litigation and enforcement of her Chapter 11 period debt pending appeal in this Court, (Bankr. R. 201, Order).

## LEGAL STANDARD

District courts sit as appellate courts when hearing appeals from bankruptcy courts. *In re Neis*, 723 F.2d 584, 588 (7th Cir. 1983). A bankruptcy court's factual findings are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). "Like any federal appellate court, this court has a special obligation to satisfy itself that there is federal jurisdiction to hear the appeal." *In re Bowers-Siemon Chem.*, 123 B.R. 821, 822 (N.D. Ill. 1991) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Pursuant to 28 U.S.C. § 158(a)(1), the Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by bankruptcy courts. The Seventh Circuit has consistently held that "orders refusing to lift or modify the automatic stay are held to be final." *In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (citing *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283-85 (2d Cir. 1990); Edith H. Jones, *Bankruptcy Appeals*, 16 Thurgood Marshall L. Rev. 245, 256-57 & n.48 (1991)).

If the issue on appeal is moot, however, the court must dismiss the appeal. *Mills v. Green*, 159 U.S. 651, 653 (1895); *Fink v. Cont'l Foundry & Mach. Co.*, 240 F.2d 369, 374 (7th Cir. 1957) ("The general law, as well as the law in this circuit, has long been established that if pending an appeal an event occurs which renders it impossible for the appellate court to grant any relief or renders a decision unnecessary the appeal will be dismissed.") (citing *Selected Prods. Corp. v. Humphreys*, 86 F.2d 821 (7th Cir. 1936)). Mootness is a constitutionally imposed limit on the jurisdiction of federal courts, which may "decide legal questions only in the

context of actual 'Cases' or "Controversies.'" *Alvarez v. Smith*, 558 U.S. 87, ---, 130 S. Ct. 576, 580 (2009) (quoting U.S. Const., art. III, § 2). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Issues are no longer "live" when it is impossible for the court to provide "any effectual relief." *Mills*, 159 U.S. at 653. If, however, there is a possibility of at least partial relief, the appeal is not moot. *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994). The party arguing for dismissal bears the heavy burden of demonstrating mootness. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979).

## ANALYSIS

In its response to Hijjawi's initial brief, Five North raises two separate but interrelated challenges to this Court's jurisdiction over her appeal. (R. 15, Five North's Resp.) The Court has attempted to disentangle them from each other and addresses each in turn. Initially, though, the Court notes that Five North mistakenly classifies Hijjawi's discharge as an "intervening" closure. (*Id.* at 10.) Although Hijjawi was granted a discharge on April 24, 2012, (Bankr. R. 147, Order of Discharge), the bankruptcy court waited until May 11, 2012 to deny her motion to extend the automatic stay and issue a written opinion concluding that her Chapter 11 period debts were non-dischargeable, (Bankr. R. 155, Mem. Op). If Hijjawi had appealed from her discharge, the very issue she seeks review of would not have been reviewable, as it had not yet been decided. Hijjawi is seeking a determination that her Chapter 11 period fees and assessments are dischargeable, not a re-instatement of the stay.

### I. Whether the termination of a bankruptcy case moots an appeal of an order to lift the automatic stay.

Five North first argues that the order lifting the stay has been mooted by the "intervening" closure of the bankruptcy case. (R. 15, Five North's Resp. at 10.) Five North

7

contends that a stay is dependent upon the existence of the bankruptcy, so the discharge of the bankruptcy case ends any disputes about the stay. (*Id.* at 11.) Five North argues that there is no relief this Court could fashion for Hijjawi because the case is closed. (*Id.*)

Generally, the filing of a bankruptcy petition operates as an automatic stay of "the enforcement, against the debtor . . . , of a judgment obtained before the commencement of" the bankruptcy case, 11 U.S.C. § 362(a)(2), or of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of" the bankruptcy case, 11 U.S.C. § 362(a)(6). The scope of the automatic stay is intended to be broad, and exceptions are interpreted narrowly, so as to temporarily enjoin all collection activities stemming from a debtor's prepetition debt. *See In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011); *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990). Under certain limited circumstances, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay." 11 U.S.C. § 362(d). Absent the request of an interested party, an automatic stay continues until the case is closed, the case is dismissed, or the discharge is granted or denied. 11 U.S.C. § 362(c).

Five North argues that once the bankruptcy case is terminated, there is no stay in existence to repeal, and therefore Hijjawi's discharge moots her appeal from the bankruptcy court's order denying her motion to extend the automatic stay. The Seventh Circuit has stated that although dismissal of a bankruptcy case typically moots related proceedings, "this general rule is not without exceptions." *In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1289 (7th Cir. 1995) (citing *In re Morris*, 950 F.2d 1531, 1535 (11th Cir. 1992)). The basis for the exceptions is that "some cases have progressed so far that judicial interference is needed to unravel or reserve the rights of parties." *Id.* (quoting *In re Morris*, 950 F.2d at 1535) (internal quotation

marks omitted); *see also In re Bli Farms*, 294 B.R. 703, 706 (Bankr. E.D. Mich. 2003) (retaining jurisdiction when "dismissal of the bankruptcy did not bring about a full resolution of all disputes"); *McCullough v. Chambers*, 98-6344 JB, 2000 WL 502827, at *4-*5 (E.D. Pa. Apr. 25, 2000) (holding that the dismissal of a bankruptcy proceeding did not preclude the bankruptcy court from reopening the case to decide a collection action); *In re Peachtree Lane Assocs., Ltd.*, 188 B.R. 815, 829 (N.D. Ill. 1995) (Castillo, J.) (stating that mechanical application of a similar rule "would provide a mechanism by which the bankruptcy courts could effectively preclude appellate review" and holding that the debtors' inability to obtain a stay of the bankruptcy sale pending appeal did not moot their appeal).

Five North argues that this Court's reversal of the decision below would only mean that the bankruptcy court should not have considered the dischargeability of the Chapter 11 period debts when determining whether to lift the stay, and that the Court cannot provide any relief because "even if the Bankruptcy Court erred by lifting the stay, it [cannot] reimpose the stay." (R. 15, Five North's Resp. at 11.) This argument misses the point of Hijjawi's appeal. Although the bankruptcy court's opinion was nominally a "Memorandum Opinion on Debtor's Motion to Extend Automatic Stay," it dealt more significantly with the novel legal question "as to the effect of the conversion of a case to Chapter 7 on § 523(a)(16) and the dischargeability of post-petition pre-conversion condominium association assessments and fees." (Bankr. R. 155, Mem. Op. at 4.) Consequently, the issue before the Court on appeal is not whether the bankruptcy court properly denied Hijjawi's motion to extend the automatic stay, but rather whether the condominium fees and assessments that accrued during the Chapter 11 period are dischargeable.

In assessing mootness, "the reviewing court must scrutinize each individual claim" and "reach a determination upon close consideration of the relief sought in light of the facts of the particular case." *In re Andreuccetti*, 975 F.2d 413, 418 (7th Cir. 1992) (internal citations and quotation marks omitted); *see also Envirodyne*, 29 F.3d at 303-04 ("A case is moot if there is no possible relief which the court could order that would benefit the party seeking it. The appeal in this case is not moot in that sense. At least partial relief is possible, and that is enough to satisfy the requirements of Article III.") (citing *Church of Scientology v. United States*, 506 U.S. 9, 11-13 (1992)). Nothing that has happened to date in this case renders this Court incapable of granting relief to Hijjawi, if appropriate. A discharge may well moot an appeal of a lift of an automatic stay in a typical case, where the Court's decision could not possibly provide any relief. *See, e.g., In re La'Teacha Tigue*, 363 B.R. 67, 71 (B.A.P. 8th Cir. 2007) (holding that the stay had been terminated by the debtor's discharge and thus "the appeal from relief from stay motion [was] moot"). Here, however, the question before the Court on appeal has continuing monetary impacts. The Court is asked to review the bankruptcy court's determination that Hijjawi owes Five North over $30,000 in condominium fees and assessments that accrued during the Chapter 11 period. Should the Court decide in Hijjawi's favor, it will certainly be able to provide relief—an order that those fees are dischargeable under Chapter 7. Thus, the case is not moot. *See, e.g., United States v. Buchman*, 646 F.3d 409, 410 (7th Cir. 2011) (holding that "the possibility of financial adjustments among the parties" was enough to keep a case from being moot, even if full relief was not possible); *In re Res. Tech. Corp.*, 430 F.3d 884, 886 (7th Cir. 2005) ("A case is moot when no further judicial relief is possible. By that standard, this dispute is live. . . . Unscrambling a transaction may be difficult, but it can be done. No one (to our knowledge) thinks that an antitrust or corporate-law challenge to a merger becomes moot as soon

as the deal is consummated.") (internal citation omitted); *Rajala v. Gardner*, No. 12-3113, 2013 WL 924455, at *4 (10th Cir. Mar. 12, 2013) ("We recognize the possibility that various Defendants have dissipated all or part of the funds. But money is fungible and we have no reason to think that $9 million could not be returned. Further, the Trustee is not required to demonstrate that he will obtain complete relief; it is likely that some measure of effective relief could be fashioned, hence, the case is not moot."); *Grant v. Thurston Grp., Inc.*, 186 B.R. 659, 661 (N.D. Ill. 1995) ("Where lifting of the stay allows a monetary action to proceed, relief is always possible in the form of requiring the return of any monetary damages."). Because the Court could provide the palpable monetary relief Hijjawi seeks if it overturns the bankruptcy court's decision, the issue raised on appeal is not moot.

## II. Whether the bankruptcy court adjudicated the issue Hijjawi raises on appeal

Five North additionally argues that even if Hijjawi's appeal is not moot, this Court has no jurisdiction over the appeal because the bankruptcy court did not and could not adjudicate whether the fees and assessments were dischargeable under § 523(a)(16). (R. 15, Five North's Resp. at 7.) Five North contends that it is well-established in this Circuit and others that "[h]earings to determine whether the [automatic stay under 11 U.S.C. § 362] should be lifted are meant to be summary in character." (*Id.* at 7-8) (citing *Vitreous Steel*, 911 F.2d at 1232). Five North goes on to quote extensively from the Seventh Circuit's consideration of the legislative history of § 362:

> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be.

11

H.R. REP. NO. 95-595, at 344 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300, *quoted in Vitreous Steel*, 911 F.2d at 1232. "Many cases hold that the issues considered at a § 362 hearing are limited strictly to adequacy of protection, equity, and necessity to an effective reorganization." *Vitreous Steel*, 911 F.2d at 1232 (citing *In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985); *In re Ellis*, 60 B.R. 432 (9th Cir. BAP 1985); *In re Quality Elecs. Ctrs.*, 57 B.R. 288 (Bankr. N.M. 1986)).

Hijjawi argues that the granting of her discharge does not affect the issue on appeal and that the Chapter 11 period debt "is either discharged and not enforceable or not discharged and enforceable." (R. 20, Hijjawi's Mot. to Reinstate ¶ 18.) Hijjawi contends that this issue was "briefed extensively" in the bankruptcy court and "extensively addressed" in that court's opinion, (*id.* ¶ 20), and Five North concedes that "[t]he parties extensively litigated the motion to extend the stay over many months." (Bankr. R. 191, Five North's Obj. ¶ 12.) Consequently, the issue Hijjawi raised on appeal is not whether or not the bankruptcy court properly denied Hijjawi's motion to extend the automatic stay, but rather whether "the post-petition claims of the Association that arose between the filing of the chapter 11 case and the conversion of the bankruptcy case to a chapter 7 are dischargeable." (R. 1, Statement of Appeal at 3.)

As previously mentioned, although the bankruptcy court's opinion was nominally entitled a "Memorandum Opinion on Debtor's Motion to Extend Automatic Stay," it dealt more significantly with the novel legal question "as to the effect of the conversion of a case to Chapter 7 on § 523(a)(16) and the dischargeability of post-petition pre-conversion condominium association assessments and fees." (Bankr. R. 155, Mem. Op. at 4.) The bankruptcy judge found that there were no issues of material fact and made only findings of law. (*Id.* at 1.) After four pages of extensive analysis and statutory interpretation, the bankruptcy judge held that the

12

Chapter 11 period fees and assessments were non-dischargeable. (*Id.* at 9.) The opinion emphasized that "the holding herein relie[d] on the statutory text [of § 523]," and the bankruptcy judge went on to calculate the amount of pre-conversion fees Hijjawi still owed Five North, a calculation he would not have made if he had not ruled conclusively that such fees were non-dischargeable. (Bankr. R. 155, Mem. Op. at 9-12.) Finally, in a subsequent order, the bankruptcy judge reiterated that in his May 11 opinion, he "adjudicated and entered a judgment" that the Chapter 11 period debt was dischargeable. (Bankr. R. 198, Order Denying Rule to Show Cause.) The bankruptcy judge further found that Five North "had a right to rely on [the judge's] judgment of nondischargeability enabling it to proceed in State Court to adjudicate its debt" from the Chapter 11 period.[6] (*Id.*)

In support of its position, Five North relies heavily on *Grella v. Salem Five Cent Savings Bank*, which held that motions to lift the automatic stay are intended to be summary and quick. 42 F.3d 26 (1st Cir. 1994). In *Grella*, the First Circuit held that allowing a hearing on such a motion "to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit," which would "force the untimely, expedited adjudication of complex and critical issues during the early stages of the case, on the basis of the movant creditor's unverified motion for relief." 42 F.3d at 33.

Although § 362 hearings are usually quick and are perhaps intended to be summary, that was not the case in this lengthy proceeding. As detailed above, the bankruptcy court's determination followed three months, six hearings, and a dozen briefs. The opinion below

---

[6] This is significant because the cases Five North cites in support of its position concern whether consideration of collateral issues in hearings to lift the automatic stay are barred by collateral estoppel or res judicata. *See, e.g.*, *In re Mullarkey*, 536 F.3d 215, 226 (3d Cir. 2008); *Grella*, 42 F.3d at 33; *Vitreous Steel*, 911 F.2d at 1234; *In re Vigil*, 250 B.R. 394, 396 (Bankr. D.N.M. 2000).

13

extensively analyzes the issue on appeal here, which the bankruptcy judge subsequently clarified that he did adjudicate. (Bankr. R. 198, Order Denying Rule to Show Cause.) Additionally, the opinion was not issued until after Hijjawi had been discharged. Thus, the fears articulated in *Grella* are simply not relevant here. The bankruptcy judge clearly intended to adjudicate more than whether the automatic stay should be extended, because at the time he issued his order, Hijjawi had been discharged and her motion to extend the automatic stay was therefore moot. Instead, the bankruptcy judge used the hearings on Hijjawi's motion to extend the automatic stay to adjudicate the dischargeability of the Chapter 11 period debt.

On the bankruptcy record before the Court, it is not apparent that either party moved to open an adversary proceeding, which the cases relied upon by Five North suggest is the more appropriate method for resolution of dischargeability issues. *See, e.g., Grella*, 42 F.3d at 33; *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 671 (S.D.N.Y. 1991), *aff'd sub nom. Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992); *Vigil*, 250 B.R. at 396. Hijjawi did not include the transcripts of any hearings except for the April 20 hearing, but neither party suggests that it objected to the bankruptcy court's clear intent to adjudicate the dischargeability of the Chapter 11 period debt in the context of Hijjawi's motion to extend the automatic stay. Further, neither party contends that this issue should have been litigated and adjudicated in a different context below, or when and how it might otherwise have been litigated and adjudicated. Additionally, neither party explains how the bankruptcy court's holding is to be reviewed if this Court does not have jurisdiction to hear the present appeal. It is well established that district courts review bankruptcy courts' findings of law *de novo. Dollie's Playhouse*, 481 F.3d at 1000. The appeal currently before this Court appears to be the only way for Hijjawi to seek review of the bankruptcy court's legal conclusion. If the Court does not have jurisdiction to consider this

14

appeal from the bankruptcy judge's legal determination, "the integrity of the appellate process is at serious risk." *Statistical Tabulating*, 60 F.3d at 1289.

Having determined that Hijjawi's appeal is not moot, and out of an abundance of caution and a desire to ensure that Hijjawi has a full opportunity for her issues to be heard, the Court will reinstate Hijjawi's appeal. The Court expects the parties to sufficiently brief the issues identified above. The Court would welcome the submission of cases in which other judges have previously faced the thorny issue of how to review a bankruptcy court's legal conclusion made in the context of an opinion on a motion to extend or lift the automatic stay, which was decided after the termination of the bankruptcy case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Hijjawi's motion to reinstate her appeal (R. 20). Hijjawi will have 21 days to file her opening appellate brief. Five North will have 30 days to file a responsive brief, and Hijjawi will have 14 days to reply. It is the Court's hope that the parties will address the issues outlined in this opinion. The Court will rule by mail.

ENTERED: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated: March 28, 2013**