UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMY A. HIJJAWI,

    Appellant,

v.

FIVE NORTH WABASH
CONDOMINIUM ASSOCIATION,

    Appellee.

No. 12 C 4430

Chief Judge Ruben Castillo

## MEMORANDUM OPINION AND ORDER

This appeal arises from a dispute over whether condominium assessments and fees incurred during the pendency of a bankruptcy proceeding, after the filing of a Chapter 11 petition and prior to the case's conversion to a Chapter 7 proceeding, are dischargeable debts. The bankruptcy court held that such assessments and fees were not dischargeable. This Court affirms the decision of the bankruptcy court.

Appellant Amy Hijjawi filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. She later converted the proceeding to a Chapter 7 bankruptcy and was granted a discharge of her debts. Between the initial filing of the Chapter 11 petition and the conversion of the case to Chapter 7 (the "Chapter 11 period"), Hijjawi incurred various assessments and fees on her condominium units charged by Five North Wabash Condominium Association ("Five North"). In her motion to extend the automatic stay after the conversion to a Chapter 7 case, Hijjawi raised the issue of whether the Chapter 11 period assessments and fees were dischargeable. In denying Hijjawi's motion to extend the automatic stay, the bankruptcy court determined that the assessments and fees that accrued during the Chapter 11 period were not dischargeable. Hijjawi's appeal of that determination is presently before the Court.

## BACKGROUND

The Court has previously described the factual and procedural history of this case. *See Hijjawi v. Five N. Wabash Condo. Ass'n*, No. 12 C 4430, 2013 WL 1248641, *1-*3 (N.D. Ill. Mar. 28, 2013). Because the timeline of events directly bears on the issues on appeal, however, the Court recites that timeline here. Hijjawi owns three condominium units at Five North Wabash Avenue in Chicago, Illinois. (Bankr. R. 155, Mem. Op. at 1.)[1] In 2011, Hijjawi violated Five North's Declaration of Condominium and the Chicago Vacation License Ordinance by renting her condominiums on a short-term basis. (*Id.* at 1-2.) After issuing a written violation, holding a hearing, fining Hijjawi, and demanding that she cease and desist short-term rentals, all without results, Five North eventually sought injunctive relief in the Circuit Court of Cook County.[2] (*Id.* at 2.) On July 11, 2011, the circuit court judge issued a temporary restraining order ("TRO") ordering Hijjawi to shut down her rental business. (*Id.*) Hijjawi continued to rent her condominiums on a short-term basis, in violation of the TRO. (*Id.*)

On July 29, 2011, Hijjawi filed a voluntary Chapter 11 petition. (Bankr. R. 1, Pet.) On August 18, 2011, Five North moved to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow it to proceed with the injunction proceeding in state court. (Bankr. R. 16, Five North's Mot. Lift Stay.) On September 1, 2011, the bankruptcy court granted Five North's motion to

---

[1] Citations to (R. \_) refer to the record number that a document is assigned on the docket for this case. Citations to (Bankr. R. \_) refer to the record of the bankruptcy proceedings, a portion of which was filed as Exhibits 3-52 to Hijjawi's appeal (R. 1).

[2] *Five N. Wabash Condo. Ass'n v. Hijjawi*, Case No. 11 CH 23830 (filed July 7, 2011).

allow it to enforce the TRO until January 1, 2012. (Bankr. R. 31, Order.)[3] On November 9, 2011, Five North filed a second motion for relief from the automatic stay, this time to allow it to enforce its state-law right to dispossess Hijjawi from her units. (Bankr. R. 39, Five North's Second Mot. Lift Stay.) Five North alleged that Hijjawi was delinquent in paying her post-petition expenses, including monthly assessments and the legal fees that Five North incurred in compelling her compliance with the TRO. (*Id.* at 5-6.) On December 12, 2011, the bankruptcy court extended its previous order lifting the automatic stay, (Bankr. R. 31), indefinitely for the purpose of allowing Five North to proceed with its state court case against Hijjawi. (Bankr. R. 63, Order.)

On December 27, 2011, Hijjawi moved to convert her case from Chapter 11 to Chapter 7. (Bankr. R. 68, Mot. Convert.) Hijjawi's case was converted to Chapter 7 on January 9, 2012. (Bankr. R. 76, Order.) On the same day, the bankruptcy court granted Five North's November 9, 2011 motion to lift the automatic stay in order to allow Five North to proceed with its state-law rights and remedies against Hijjawi, but stayed the order until February 10, 2012 to give the Chapter 7 Trustee an opportunity to act before the order became effective. (Bankr. R. 75, Order; Bankr. R. 155, Mem. Op. at 3.)

---

[3] The bankruptcy court's order was not included in the bankruptcy record provided on appeal. The Court takes its information from the bankruptcy docket, which describes docket entry 31 as "Order Granting Motion for Relief from Stay (Related Doc # 16) including to allow Five North Wabash Condominium Association to enfore [sic] the Temporary Restraining Order issued in that proceeding until January 1, 2012."

On January 31, 2012, Hijjawi moved to extend the automatic stay,[4] arguing that the Chapter 11 period condominium assessments and fees were dischargeable and thus Five North should not be allowed to enforce them. (Bankr. R. 82, Mot. Extend Stay ¶¶ 7-13.) Five North entered its objection to that motion on February 9, 2012, arguing that any debts Hijjawi accrued after the filing of her petition, i.e., any Chapter 11 period debts, were non-dischargeable. (Bankr. R. 83, Five North's Obj. ¶¶ 10-14.) After a hearing on February 10, 2012, the automatic stay was extended until March 2, (Bankr. R. 90, Order), and supplemental briefing was ordered on a variety of issues, including whether the Chapter 11 period assessments and fees were dischargeable, (*see* Bankr. R. 155, Mem. Op. at 3). The parties briefed this issue extensively. (Bankr. R. 95, Debtor's Resp.; Bankr. R. 108, Five North's Reply; Bankr. R. 112, Five North's Suppl. Reply; Bankr. R. 113, Debtor's Rebuttal; Bankr. R. 115, Debtor's Rebuttal.)

After a hearing on March 2, 2012, the automatic stay was again extended and supplemental briefing on the dischargeability of the Chapter 11 period assessments and fees was again ordered and completed. (Bankr. R. 119, Order; Bankr. R. 121, Five North's Suppl. Br.; Bankr. R. 122, Debtor's Resp.) On March 16, 2012, after a hearing, the bankruptcy judge orally indicated a ruling in favor of Five North, but the stay was again extended to allow Five North to file a statement with a detailed accounting of the Chapter 11 period assessments and fees, (Bankr. R. 128, Order; Bankr. R. 155, Mem. Op. at 4), which Five North filed on March 25, 2012, (Bankr. R. 132, Five North's Statement). At a March 27, 2012 hearing, the bankruptcy court again extended the stay and ordered briefing in response to Five North's accounting statement. (*See* Bankr. R. 155, Mem. Op. at 4.) Such briefing was completed, (Bankr. R. 140,

---

[4] Although Hijjawi's motion was nominally titled "Debtor's Motion to Extend Automatic Stay," the title is misleading. The motion and the accompanying responsive briefing appear to have been used as a vehicle for the briefing of a number of substantive issues including, most significantly, the dischargeability of the Chapter 11 period assessments and fees.

4

Debtor's Resp.; Bankr. R. 142, Five North's Reply; R. 148, Debtor's Resp.), and a final hearing was held on April 20, 2012.

On April 24, 2012, Hijjawi was granted a Chapter 7 discharge. (R. 147, Order of Discharge.) On May 11, 2012, the bankruptcy court denied Hijjawi's motion to extend the automatic stay and issued a thorough opinion holding that the Chapter 11 period assessments and fees were non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(16) and 727. (Bankr. R. 155, Mem. Op; Bankr. R. 157, Order.)

On June 7, 2012, Hijjawi appealed to this Court from the bankruptcy court's order lifting the automatic stay.[5] (R. 1, Appeal.) Hijjawi argues that the Chapter 11 period assessments and fees are dischargeable. (R. 13, Hijjawi's Br. at 5-7.) Five North argued that the issue on appeal had not actually been adjudicated by the bankruptcy court and therefore an appeal was inappropriate. (R. 15, Five North's Resp. at 10.) Five North further argued that this Court has no jurisdiction to entertain Hijjawi's appeal because the closure of the bankruptcy case mooted the appeal. (Id. at 10-11.) On August 8, 2012, the Court concluded that it had no jurisdiction to proceed with Hijjawi's appeal and dismissed it without prejudice with full leave to reinstate. (R. 19, Min. Entry.) The Court invited Hijjawi to file a motion with a supporting memorandum stating the basis of this Court's jurisdiction if she wanted to proceed with her appeal. (Id.) Hijjawi filed a motion to reinstate her appeal on August 15, 2012. (R. 20, Hijjawi's Mot. Reinstate.) For the reasons stated in its earlier ruling, the Court granted that motion on March 28, 2013 and reinstated Hijjawi's appeal while expressly reserving a ruling on whether it had

---

[5] Hijjawi's appeal briefing purports to appeal an order entered on May 14th. (R. 1, Appeal at 1, 3.) This appears to be a scrivener's error, as the bankruptcy case docket sheet Hijjawi attaches to her appeal does not contain a court order from May 14. The substance of her appeal and Five North's response concerns the bankruptcy court's order denying the motion to extend the automatic stay, which was entered on May 11.

5

jurisdiction. (R. 27, Mem. Op. & Order.) Hijjawi filed her amended initial brief on April 18, 2013, (R. 28, Hijjawi's Am. Br.), which is presently before the Court.

## STANDARD OF REVIEW

District courts sit as appellate courts when hearing appeals from bankruptcy courts. *In re Neis*, 723 F.2d 584, 588 (7th Cir. 1983). Pursuant to 28 U.S.C. § 158(a)(1), the Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by bankruptcy courts. The Seventh Circuit has consistently held that "orders refusing to lift or modify the automatic stay are held to be final." *In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (citing *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283-85 (2d Cir. 1990); Edith H. Jones, *Bankruptcy Appeals*, 16 Thurgood Marshall L. Rev. 245, 256-57 & n.48 (1991)). A bankruptcy court's factual findings are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). "Like any federal appellate court, this court has a special obligation to satisfy itself that there is federal jurisdiction to hear the appeal." *In re Bowers-Siemon Chem.*, 123 B.R. 821, 822 (N.D. Ill. 1991) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

## ANALYSIS

### I. Jurisdiction

As an initial matter, the Court must determine whether it has jurisdiction to hear this appeal. In response to Hijjawi's initial brief, Five North challenged this Court's jurisdiction over Hijjawi's appeal. (R. 15, Five North's Resp.) Specifically, it argued that the bankruptcy court's order lifting the stay was mooted by the closure of the bankruptcy case, (*id.* at 10), and that the bankruptcy court did not—and *could* not—properly adjudicate dischargeability in the context of

6

a motion to extend the automatic stay, (*id.* at 7.) In its prior memorandum opinion and order, this Court determined that the issue raised on appeal was not moot. *Hijjawi*, 2013 WL 1248641, at *5. The Court requested that in their subsequent briefs, the parties address the jurisdictional issue involved in reviewing a bankruptcy court's legal conclusion made in the context of an opinion on a motion to extend the automatic stay, which was issued after the termination of the bankruptcy case. *Hijjawi*, 2013 WL 1248641, at *8.

Pursuant to Bankruptcy Rule 7001(6), a dischargeability determination requires an adversary proceeding. However, parties may waive their right to an adversary proceeding. *See Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990). This waiver may be express, *see id.*, or implied, *see In re Zolner*, 249 B.R. 287, 292 (N.D. Ill. 2000) ("Parties waive their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate.") (quoting *In re Zale Corp.*, 62 F.3d 746, 763 (5th Cir. 1995)) (internal alterations and quotation marks omitted). The Supreme Court has held that a bankruptcy court's failure to employ adversary proceedings when required by the Bankruptcy Rules does not render a judgment void if the parties have actual notice and an opportunity to present their objections. *U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, —, 130 S. Ct. 1367, 1380 (2010); *see also Zolner*, 249 B.R. at 292 ("In essence, the parties must be apprized of and have a chance to address all the issues being decided. Furthermore, unless the party is able to demonstrate prejudice by the failure to file an adversary proceeding, a court will find the error constitutes harmless error.") (citing *In re Cannonsburg Envtl. Assocs., Ltd.*, 72 F.3d 1260, 1264-65 (6th Cir. 1996); *Zale*, 62 F.3d at 763) (internal citations omitted).

7

Presently, Hijjawi argues that the parties' procedural due process rights were not violated by the lack of an adversary proceeding. (R. 28, Hijjawi's Am. Br. at 16.) Noting that she suffered the adverse decision, Hijjawi contends that she "does not believe the result would have been different if it was pursuant to an adversary proceeding" because the parties had notice and ample opportunity to assert their positions below. (*Id.*) Accordingly, Hijjawi argues that the parties' procedural due process rights were not violated by the bankruptcy court's determination of the dischargeability matter within the context of the motion to extend the automatic stay. (*Id.* at 15-16.) She also argues that the bankruptcy court considered its May 14, 2012 memorandum opinion to be a final judgment, as emphasized in its October 26, 2012 order staying enforcement of the decision pending this appeal. (*Id.*; Bankr. R. 201, Order.)

Five North "generally agrees" that the parties consented to the bankruptcy court's dischargeability determination within the context of the motion to extend the automatic stay. (R. 30, Five North's Resp. at 9.) It expresses concern, however, that the Seventh Circuit will reject the waiver argument and "hold that the Bankruptcy Court's determination was not necessary to adjudicate the Lift Stay Motion and thus is not a judgment on that issue, as it did in *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990)." (*Id.*)

First, in light of Five North's concession and the fact that the parties had notice and an opportunity to brief the dischargeability issue, the Court concludes that the parties waived an adversary proceeding. Second, this Court does not share Five North's concern about *Vitreous Steel* because the Seventh Circuit has previously held that an adversary proceeding can be waived, *Pence*, 905 F.2d at 1109, and the instant case is readily distinguishable from *Vitreous Steel*. There, the bankruptcy court stated at the outset of the hearing on the motion to lift the automatic stay: "We are here on a motion to lift stay, and if your contentions or arguments don't

8

relate to [section ]362 then in my judgment they are not relevant and I will have to rule accordingly based upon proper objections." *Vitreous Steel*, 911 F.2d at 1229. However, when the parties subsequently filed an adversary complaint, the bankruptcy court held that several of the charges in the complaint were barred as having been decided, implicitly or explicitly, on the motion to lift the automatic stay. *Id.* at 1230. The Seventh Circuit held that the issues that were improperly determined on the lift stay motion and then properly raised in the adversary complaint were not barred by *res judicata* or collateral estoppel. *Id.* at 1234. Here, by contrast, both parties were aware that the motion to extend the stay was being used to make a dischargeability determination, as evidenced by the fact that the parties briefed this very issue. (Bankr. R. 95, Debtor's Resp.; Bankr. R. 108, Five North's Reply; Bankr. R. 112, Five North's Suppl. Reply; Bankr. R. 113, Debtor's Rebuttal; Bankr. R. 115, Debtor's Rebuttal.) Neither party contested the procedures below or filed an adversary complaint. Both parties had plenty of notice and ample opportunity to be heard on the issue of dischargeability before the bankruptcy court made its determination. Accordingly, the Court finds that the function of an adversary proceeding was satisfied and that the parties waived the formality of an adversary proceeding on the dischargeability of the Chapter 11 period assessments and fees.

Finally, the Court finds that the issues below were actually adjudicated. As discussed in this Court's prior opinion, it is clear that the parties fully briefed and had opportunities to argue the issue of the dischargeability of the Chapter 11 period assessments and fees, and that the bankruptcy court gave the issue significant consideration. *See Hijjawi*, 2013 WL 1248641, at *6. Additionally, the bankruptcy court's decision to issue an opinion on a motion to extend the automatic stay after Hijjawi had been granted her discharge reinforces that the bankruptcy court

9

intended to use the motion to make a determination that was still relevant at that time, i.e., that the Chapter 11 period assessments and fees were not dischargeable.

Thus, having found that the parties waived an adversary proceeding, that they had notice and opportunities to argue the issue, and that the bankruptcy court adjudicated the issue, this Court finds that it has jurisdiction to hear this appeal. The Court now turns to the merits of this appeal.

**II.     Dischargeability of the Chapter 11 Period Assessments and Fees**

The substantive issue on appeal involves the interplay between 11 U.S.C. §§ 348(a) and (b), 523(a)(16), and 727(b). Section 727 of the Bankruptcy Code governs Chapter 7 discharges. It states: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of *the order for relief under this chapter*." 11 U.S.C. § 727(b) (emphasis added). Subsection (a)(16) of section 523, which is pertinent here, states that a Chapter 7 discharge does not discharge a debtor from any debt

> for a fee or assessment that becomes due and payable *after the order for relief* to a membership association with respect to the debtor's interest in a unit that has condominium ownership . . . for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit.

11 U.S.C. § 523(a)(16) (emphasis added). Section 523(a)(16) makes clear that "nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case." *Id.*

When a bankruptcy case is converted from one chapter to another, section 348 governs the effect of the conversion. Subsection (a) instructs that the conversion

constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or *the order for relief.*

11 U.S.C. § 348(a) (emphasis added). While subsection (c) does not apply here, subsection (b) provides that in an enumerated list of sections,[6] including section 727(b), the phrase "the order for relief under this chapter" means the conversion of the bankruptcy case to such chapter. 11 U.S.C. § 348(b). Accordingly, for the purposes of the instant case, section 727(b) is modified to mean: Except as provided in section 523, a Chapter 7 discharge discharges the debtor from all debts that arose before the date of *the conversion of the case to Chapter 7. Id.* Read together, sections 348(b) and 727(b) instruct that the pre-conversion debt is thus eligible for discharge. This understanding is clear in the opinion below, (Bankr. R. 155, Mem. Op. at 7), and is not contested here, (*see* R. 30, Five North's Resp. at 15).

On appeal, the parties dispute the meaning of the phrase "the order for relief" in section 523(a)(16) and the application of section 348(b) to section 523(a). Even though section 348(b) instructs that the post-petition pre-conversion debt is *eligible* for discharge, it is still subject to the exceptions in section 523. 11 U.S.C. § 727(b) ("Except as provided in section 523 . . ."). The bankruptcy court held that the phrase "the order for relief" in section 523(a)(16) has a different meaning than the phrase "the order for relief under this chapter" that is addressed and modified by section 348(b). (Bankr. R. 155, Mem. Op. at 8.) The bankruptcy court concluded that because section 348(b) does not list section 523 as one of the exceptions to section 348(a), the latter governs the reading of section 523. (*Id.*) Accordingly, the bankruptcy court determined that the phrase "the order for relief" in section 523(a)(16) refers to the original order

---

[6] Section 348(b) defines the phrase "the order for relief under this chapter" for the purposes of sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) in conversion cases. 11 U.S.C. § 348(b).

11

for relief, i.e., Hijjawi's Chapter 11 petition. (*Id.* at 9.) The bankruptcy court held that pursuant to section 348(a), the conversion did not affect the date of filing, and that the Chapter 11 period condominium assessments and fees were non-dischargeable pursuant to section 523(a)(16). (*Id.*)

Hijjawi argues that the bankruptcy court's holding that the Chapter 11 period assessments and fees are not dischargeable is proven incorrect by the language of 11 U.S.C. § 348(d), the language of section 523(a)(16), and the legislative history of section 523(a)(16). (R. 28, Hijjawi's Am. Br. at 6-15.) First, Hijjawi argues that section 348(d) requires the Chapter 11 period assessments and fees to be treated as pre-petition claims subject to discharge. (*Id.* at 6.) Section 348(d) states:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d). Because Five North's claims against Hijjawi are not the kind of administrative claims specified in section 503(b), Hijjawi contends that they should be treated as if they arose immediately before the date of the filing of her petition. (R. 28, Hijjawi's Am. Br. at 6.) She contends that *In re Fickling*, 361 F.3d 172 (2d Cir. 2004), is directly on point and that the bankruptcy court misread and misapplied the holding of that case.

Contrary to Hijjawi's argument, the Court finds that the bankruptcy court correctly cited *Fickling* for the proposition that, reading sections 348(b) and 727(b) together, post-petition pre-conversion debts are dischargeable except those listed in section 523. (Bankr. R. 155, Mem. Op. at 7) (citing *Fickling*, 361 F.3d at 174). Although *Fickling* also interpreted section 348(d), that analysis is not applicable here because the issue there was whether section 348(d) allowed pre-conversion administrative expenses specified in section 503(b) to be discharged. 361 F.3d at

12

174-75. The widely recognized purpose of section 348(d) is to address the priority status of pre-conversion administrative claims. *See, e.g., In re Midway Airlines Corp.*, 406 F.3d 229, 238 (4th Cir. 2005) (section 348(d) "adjusts the priorities of claims against the estate that arise after the order for relief was entered but prior to conversion"); *Matter of Pavlovich*, 952 F.2d 114, 118-19 (5th Cir. 1992) ("Section 348(d) governs the relative priorities of pre-petition and post-petition-pre-conversion claims. Its principal function is to distinguish between Chapter 11 administrative priority claims and non-priority claims, for the former receive a higher distributional priority in the converted Chapter 7 case.") (internal citations omitted); *In re Lissner Corp.*, 119 B.R. 143, 147 (N.D. Ill. 1990) ("the exception in § 348(d) simply acknowledges the fact that administrative expense claims are to maintain their priority status in the Chapter 7 case"). In the context of non-administrative claims, such as those at issue here, "[s]ection 348(d) simply does not address the availability of remedies against discharge and dischargeability. If it did, it would conflict with §§ 348(a) and (b), which, taken together, specifically incorporate §§ 727 and 523 in the converted case." *Pavlovich*, 952 F.2d at 118; *see also Fickling*, 361 F.3d at 174-75; 16 *Collier on Bankruptcy* ¶ 348.05[3].

Additionally, even if section 348(d) had the meaning Hijjawi attaches to it, it has no bearing on the holding below because the bankruptcy court *did* treat the Chapter 11 period assessments and fees as if they arose pre-petition for the purpose of section 727(b), pursuant to section 348(b). The bankruptcy court found that the Chapter 11 period assessments and fees were subject to discharge pursuant to section 727(b), but that *even when treated as pre-petition claims*, they were excepted from discharge by section 523(a)(16). (Bankr. R. 155, Mem. Op. at 7.) The cases Hijjawi cites to support her position that section 348(d) requires the Chapter 11 period assessments and fees to be discharged are inapposite for several reasons—most

significantly, because they do not involve debts that are excepted from discharge under section 523(a). *See, e.g., In re Means*, 454 B.R. 636, 638-39 (Bankr. D.S.C. 2011); *In re Davis*, 311 B.R. 922, 925 (Bankr. M.D. Ga. 2004); *In re Toms*, 229 B.R. 646, 653 (Bankr. E.D. Pa. 1999) ("[W]hen a bankruptcy case is converted to chapter 7 from chapters 11, 12 or 13, section 727(b) renders dischargeable all debts which arose before the date of conversion, unless those debts are made non-dischargeable by section 523(a)."); *In re Ramaker*, 117 B.R. 959, 963 (Bankr. N.D. Iowa 1990).

Hijjawi next argues that the language of section 523(a)(16) "directly contradicts the holding of the lower court." (R. 28, Hijjawi's Am. Br. at 8.) Specifically, she argues that the statutory phrase "but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case" means that assessments and fees that arose before the conversion to Chapter 7 are not excepted from discharge. (*Id.* at 8-9.) However, Hijjawi overlooks section 348(a), which clearly instructs that except as specified in sections 348(b) and (c), conversion does not change the date of the order for relief. Section 348(b) provides that the phrase "the order for relief under this chapter" means the conversion to the chapter in a limited and enumerated list of sections. Because neither section 348(b) nor section 348(c) refer to section 523, the date of "the order for relief" referred to in section 523(a)(16) is the date of the initial order for relief—here, Hijjawi's filing of the Chapter 11 petition. 11 U.S.C. § 348(a). This reading of section 523(a)(16) is consistent with the legislative intent of the section, as discussed in more detail below.

Finally, Hijjawi argues that the legislative history of section 523(a)(16) and the purpose of the Bankruptcy Code support her interpretation. She contends that exceptions to discharge are

14

to be "narrowly construed in favor of the debtor," and she urges the Court to construe section 523(a)(16) in such a way as to find the Chapter 11 period assessments and fees dischargeable. (R. 28, Hijjawi's Am. Br. at 13) (quoting *In re Platter*, 140 F.3d 676, 680 (7th Cir. 1998)). The purpose of a bankruptcy discharge is to give the debtor a fresh start, and that fresh start is accomplished in a Chapter 7 case through section 727(b). Hijjawi argues that the bankruptcy court's decision impedes the "fresh start" Congress intended discharge to provide debtors "because the debtor will always be in a catch up situation." (*Id.* at 13.)

Prior to the enactment of section 523(a)(16), the circuits were split regarding whether condominium assessments that came due post-petition arose when they were assessed and were therefore non-dischargeable, *In re Rosenfeld*, 23 F.3d 833, 837 (4th Cir. 1994), or arose pre-petition when the debtor agreed to pay any future assessments, *Matter of Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990). In 1994, Congress reacted to the circuit split by enacting 11 U.S.C. § 523(a)(16). Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 309, 108 Stat. 4106 (Oct. 22, 1994). As enacted in 1994, section 523(a)(16) created an exception to discharge

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which—
>
> (A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or
>
> (B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period,
>
> but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

11 U.S.C. § 523(a)(16) (1994). The intent of the amendment was "to avoid the unfair burden on the other members of the [condominium] association which results from discharging the debtor's

15

assessments." 140 Cong. Rec. S14750-01 (Oct. 7, 1994) (remarks of Sen. Heflin). The amendment was deemed

> necessary to correct a line of cases in which courts have held that future payments by the debtor to a community association are discharged in bankruptcy. This amendment simply makes clear that assessments by community associations which become due after the bankruptcy order for relief are not discharged, as long as the debtor receives the benefits.

140 Cong. Rec. S4521-01 (Apr. 20, 1994) (remarks of Sen. Thurmond).

In 2005, section 523(a)(16) was amended to its current version, which further limits the dischargeability of post-petition condominium assessments. 11 U.S.C. § 523(a)(16) (2005); H.R. Rep. 109-31(I), at 88 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 154. Pursuant to the current version, post-petition condominium assessments are not only excepted from discharge when the debtor physically occupies or receives rental income from the unit, they are non-dischargeable "as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest" in the property. 11 U.S.C. § 523(a)(16). It is clear that with this amendment, Congress sought to "broaden the protections accorded to community associations with respect to fees or assessments arising from the debtor's interest in a condominium, cooperative, or homeowners' association," even at the expense of the debtor's "fresh start." H.R. Rep. 109-31(I), at 88 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 154. Thus, the legislative history and the plain language of section 523(a)(16) support the bankruptcy court's holding that the Chapter 11 period assessments are excepted from Hijjawi's Chapter 7 discharge.

This holding turns on the fact that the phrase "the order for relief" in section 523(a)(16) does not have the same meaning as the phrase "the order for relief under this chapter," as used in section 727(b) and modified by section 348(b). "Although § 348(b) does apply generally to the discharge provisions of § 727 its application is expressly excluded from the determination of

16

exceptions to discharge by the first phrase of § 727(b)." *Matter of Cross*, 119 B.R. 652, 653 (W.D. Wis. 1990). Interpreting the relevant sections of the Code to allow the discharge of debts that would not have been dischargeable if the case were initially filed as a Chapter 7 case "would permit the debtor to manipulate the dischargeability of debts through conversion." *Id.* at 653-54; *see also Pavlovich*, 952 F.2d at 118. Hijjawi did not provide, and this Court is unable to locate, any case law indicating that section 348(b) should preclude the operation of section 523(a)(16) or that, despite the omission of section 523(a) in the enumeration of sections to which section 348(b) applies, section 348(b) should somehow act to modify the phrase "the order for relief" within that section. There are numerous decisions, however, that indicate that section 348(b) does *not* affect the operation of section 523(a). *See, e.g., Fickling*, 361 F.3d at 175 ("For purposes of discharge, all claims, including claims for administrative expenses, that arise after the filing of the Chapter 11 petition but prior to the conversion to Chapter 7, and that are not expressly exempted by § 523, are subject to discharge."); *In re Chesher*, No. 95-24885-B, 1996 WL 745310, at * 2 (Bankr. W.D. Tenn. Dec. 23, 1996) (pre-conversion post-petition debt would have been dischargeable pursuant to section 727(b) but it was excepted from discharge by section 523(a)(2)); *Cross*, 119 B.R. at 653 (section 348(b) does not apply to section 523); *cf. In re Gilpin*, 209 B.R. 490, 492 (Bankr. W.D. Mo. 1997) (finding that because the pre-conversion post-petition debt in question was not excepted from discharge under section 523(a), it was dischargeable under section 727(b)).

This Court holds that the condominium assessments and fees that came due after the filing of Hijjawi's Chapter 11 petition but before the conversion of the case to one under Chapter 7 are not dischargeable pursuant to section 523(a)(16). Although pursuant to section 348(b) the Chapter 11 period assessments and fees are to be treated as pre-petition debt for the purposes of

17

section 727(b), that debt is still excepted from discharge under section 523. Because section 348(b) does not apply to section 523(a)(16), the Chapter 11 period assessments and fees became due and payable after the order for relief for the purposes of that section—Hijjawi's initial petition—and are therefore non-dischargeable.

## CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is AFFIRMED. The Clerk of the Court is directed to enter judgment in favor of the appellee, Five North Wabash Condominium Association.

ENTERED: _____
Chief Judge Ruben Castillo
United States District Court

**Dated: July 3, 2013**